UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KITTY WALK SYSTEMS, INC., JEFF
KING and LISE KING,

                Plaintiffs,

-against-

MIDNIGHT PASS INCORPORATED,
BRADFORD D. WHITE, JULIE ANNE
WHITE, BARRETT DISTRIBUTION
CENTERS, INC.,
formerly known as BARRETT WAREHOUSE
AND TRANSPORT, INC. and SAN JOSE
DISTRIBUTION SERVICES, INC.,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 05-6110

(Wexler, J.)

APPEARANCES:

    SHER & SHER, P.C.
    BY: DANIEL J. SHER, ESQ.
    111 Great Neck Road
    P.O. Box 376
    Great Neck, NY 11021
    New York, New York 10022
    Attorneys for Plaintiffs

    EISENBERG & CARTON
    BY: LLOYD M. EISENBERG, ESQ.
        RUYA CARTON, ESQ.
    2631 Merrick Road, Suite 401
    Bellmore, New York 11710
    Attorneys for Defendants

WEXLER, J.

        This is an action commenced by parties to a joint venture business agreement against

their co-venturers. Plaintiffs are Kittywalk Systems, Inc. ("Kittywalk") and its principals, Jeff

and Lise King (the "Kings")( collectively "Plaintiffs"). Named as defendants are Midnight Pass Incorporated ("Midnight Pass"), as well as its principals, Bradford D. and Julie Anne White (the "Whites") (collectively "Defendants"). Also named as defendants are Barrett Distribution Centers, Inc, formerly known as Barrett Warehouse and Transport, Inc. ("Barrett") and San Jose Distribution Services, Inc., ("San Jose"), corporate entities alleged to have been involved in the joint venture at issue. Plaintiffs' complaint makes clear that they seek no relief against either Barrett or San Jose. These entities are named solely to put them on notice of any relief ordered herein.

Presently before the court is Defendants' motion to dismiss all but one count in Plaintiffs' complaint. After outlining the relevant facts and legal principles, the court will turn to the merits of the motion.

## BACKGROUND

I. The Parties' Business Agreement

Facts regarding the nature of the parties' business relationship are gleaned from Plaintiffs' complaint and taken as true at this point in the proceedings. Additionally, as the parties opposed to the motion, facts set forth herein are construed in the light most favorable to Plaintiffs. Moreover, in the context of this motion to dismiss, the court considers only the facts set forth in the complaint.

The Kings reside in the County of Nassau and the Whites are residents of the State of Massachusetts. Plaintiff Lise King is a designer of pet products certain of which are sold under the "Kittywalk" name. Plaintiffs allege that they are the owners of trademark and patent rights issued in connection with their pet products. The Whites are alleged to be the sole principals of

2

the corporate defendant Midnight Pass.

During a time period described only as "for some years past," the Kings, through the corporate entity Kittywalk, and the Whites, through Midnight Pass, are alleged to have acted pursuant to an unwritten joint venture agreement. Under this agreement, Midnight Pass and the Whites are alleged to have manufactured and marketed pet products under the Kittywalk name. While it is conceded that the agreement among the parties was unwritten, Plaintiffs have nonetheless set forth a fairly detailed statement regarding the terms of the parties' venture. Among those terms specifically alleged to exist are the Whites' agreement to devote their efforts solely to the promotion of Plaintiffs' products, the joint financing of product acquisition and warehousing, the collection of monies and accounting for profits.

At some point prior to the filing of the complaint herein, the parties' business relationship began to deteriorate. The complaint contains a detailed litany of alleged wrongdoing, constituting thirty separately stated paragraphs. Among other things, the Whites are alleged to have wrongfully diverted their sales efforts away from the Kittywalk line of products by, inter alia, devoting less than 50% of the Midnight Pass website space to Kittywalk products. Midnight Pass is also alleged, in a variety of ways, to have wrongfully caused consumers to confuse the identity of Kittywalk with that of Midnight Pass and to have misappropriated business opportunities belonging to Plaintiffs.

While it is clear to the court that factual issues as to the conduct of the parties and the terms of their contract abound, there is no question as to a limited number of certain core issues. Specifically, the parties entered into and have been acting, for several years, pursuant to an unwritten joint venture agreement. While the duties of each party are vague, it is clear that a goal

3

of the venture was to act together to design, finance, manufacture and sell pet products under the Kittywalk name. Authentic Kittywalk products are currently in the possession of Defendants who continue to market and sell those products. The parties shared profits from their venture, but the nature of the split of those profits is an open question. More specific terms of the venture cannot be discerned at this time.

II. The Complaint

As noted, Defendants are alleged to have violated the terms of the parties' venture in a variety of ways. Plaintiffs rely on these violations in support of eleven separately stated causes of action. The first six causes of action in the complaint sound in either trademark or patent infringement. Plaintiffs' seventh cause of action is styled as a claim for declaratory judgment. The eighth cause of action seeks an accounting. Plaintiffs' remaining causes of action set forth state law claims for breach of contract and a request for damages as a separately stated cause of action.

III. Prior Proceedings

The complaint in this action was filed along with a request for preliminary injunctive relief. That request was denied after oral argument. The court declined to grant injunctive relief on the ground that Plaintiffs failed to show the required irreparable harm. The court also observed that the parties had a business relationship pursuant to which Defendants distributed authentic products about which there was no confusion. While the request for injunctive relief was denied, the court ordered that Defendants maintain all records of product in their inventory and of sales. The parties were ordered to enter into a discovery schedule and Defendants were granted leave to make the present motion.

IV.    The Motion to Dismiss

Defendants seek dismissal of all but the cause of action for an accounting. Dismissal of the federal trademark and patent claims is sought on the ground that no such causes of action exist where goods sold are genuine and there can therefore been no confusion as to source. Defendants seek dismissal of the state causes of action (other than the action for an accounting) on the ground that where, as here, the parties are co-venturers who have terminated an at-will agreement, no actions at law can be pursued prior to an accounting.

Discussion

I.    The Federal Claims

Plaintiffs' complaint sets forth six federal causes of action. Those claims include four claims for alleged trademark and patent infringement (the first, second, fourth and fifth causes of action). Plaintiffs' remaining federal claims are a claim for the attempted importation of infringing copies (the third cause of action) and a claim for "turnover" of patented and trademarked products (the sixth cause of action). The motion to dismiss these federal causes of action rests primarily on the argument that because the goods being sold are authentic goods that are properly in possession of Defendants, there can be no question as to product confusion and therefore no federal trademark or patent claim can be sustained.

A.    The First, Second, Fourth and Fifth Causes of Action

Plaintiffs' trademark infringement claims are brought under the Lanham Act, 15 U.S.C. §§ 1051-1127 ("Lanham Act Claims"). A Lanham Act claim does not generally lie following the unauthorized sale of genuine goods. Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 61-62 (2d Cir. 1992). Instead, success on such a claim requires a showing that customers will be misled or

5

confused as to the source of goods purchased. <u>Polymer</u>, 975 F.2d at 63. Such confusion occurs when a consumer purchases goods on the mistaken belief that the goods are those of a competitor.

Here, there is no question but that any goods purchased are precisely what they purport to be – the only question is which party has the right to sell products and the apportionment of any profit. As such, this case is not one of consumer confusion that can be relied upon to support a Lanham Act claim, but a case alleging breach of contract as to authentic goods. Under these circumstances, no claim for trademark or copyright infringement or unfair competition will lie. <u>Accord</u> <u>Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates North America, Inc.</u>, 270 F. Supp.2d 432, 436 (S.D.N.Y. 2003); <u>Abelman v. Polinex Plastic Prods. Canada, Ltd.</u>, 1992 WL 212471 *3 (S.D.N.Y. 1992).

<u>Abelman</u> and <u>Christopher Norman</u> are particularly on point. These cases involved failed joint venture agreements to market authentic goods. When the ventures began to fall apart, one venturer sued the other under the Lanham Act. In both cases, however, the court noted that no confusion as to source of goods could exist where the goods are genuine and the parties "are fractured parts of the same enterprise, and the product at issue is the fruit of that enterprise. . . ." <u>Christopher Norman</u>, 270 F. Supp.2d at 436, quoting <u>Polinex</u>, 1992 WL 212471 at *3. While Plaintiffs attempt to distinguish these cases on the ground that they were decided in the context of denial of a preliminary injunction, this is a distinction without significance. Just as the failure to establish a likelihood of consumer confusion led to denial of preliminary injunctive relief in <u>Christopher Norman</u> and <u>Polinex</u>, the absence of any allegation of confusion leads to dismissal of the Lanham Act claims for failure to state a claim here.

Plaintiffs' patent infringement claims fail for a similar reason. As noted, there is no question as to whether the goods sold are genuine. There can be no liability to a seller in valid possession of patented goods based upon the re-sale of those goods. Under the "first sale" doctrine, a patent owner who transfers his goods to another has given up any right to restrict the re-sale of those goods to a consumer. See Innomed Labs, LLC v. Alza Corp., 368 F.3d 148, 161 (2d Cir. 2004); Jazz Photo Corp. v. International Trade Commission, 264 F. 3d 1094, 1102 (Fed. Cir. 2001). Because Plaintiffs seek only to restrict the sale of authentic goods properly in the possession of Defendants, any patent claim must be dismissed.

To the extent that Plaintiffs claim violation of the Anti-Cybersquatting Protection Act (the "ACPA"), 15 U.S.C. §1125(d)(1), any such claim is also dismissed. To establish an ACPA claim plaintiff must show: "(1) that the defendant's domain is either (a) dilutive of a famous mark or (b) identical or confusingly similar to a distinctive trademark; and (2) that the defendant has 'a bad faith intent to profit from that mark.'" PGC Property, LLC v. Wainscott/Sagaponack Property owners, Inc. 250 F. Supp.2d 136, 143 (E.D.N.Y. 2003). Here, as noted, the goods offered for sale are legitimate goods that Defendants have the right to sell. Defendants are therefore not diluting a famous mark nor using a mark that is confusingly similar to that mark. Instead, Defendants are merely advertising authentic goods, over the internet, of which they are in proper possession.

For the foregoing reasons, the court dismisses the first, second, fourth and fifth causes of action.

B.      The Sixth Claim for Relief

The sixth claim for relief, seeking "turnover" of patented and trademarked products, must

7

also be dismissed. There is no question but that Defendants are lawfully in possession of authentic goods obtained during the course of the parties' agreement. While Defendants will be required to account to Plaintiffs as to the disposal of those goods, they may not be required to divest themselves of those goods at this point. The sixth claim for relief is therefore dismissed.

C.     The Third Claim for Relief

Finally, the court dismisses the third claim for relief, for attempted importation of infringing goods. Even when giving the benefit of all pleading doubts to Plaintiffs, this claim alleges only that Defendants may, at some point in the future, manufacture products copied from those initially sold by the joint venture. Such allegations support nothing more than a possible future claim. Without more, the third claim for relief must be dismissed.

III.     State Law Claims

Having dismissed all of Plaintiffs' federal claims, the court turns to assess the viability of the state law claims. Defendants seek dismissal of all claims other than the claim for an accounting. Specifically, Defendants argue that where, as here, the parties are co-venturers, such claims may not be considered prior to an accounting.

The parties here have been acting pursuant to an open-ended unwritten joint venture agreement. Under New York law, the rights of parties to a joint venture agreement are governed by reference to the principles of the laws of partnership. Scholastic, Inc. v. Harris, 259 F.3d 73, 84 (2d Cir. 2001); Stratavest Ltd. v. Rogers, 888 F. Supp. 35, 37 (S.D.N.Y. 1995); Ebker v. Tan Jay Internat'l. Ltd., 741 F. Supp. 448, 468 (S.D.N.Y. 1990), aff'd., 930 F.2d 909 (1991). Partnerships at will, like the parties' agreement here, may be "dissolved at the will of either of the partners on a moment's notice without liability for breach of contract." Id.; accord 220-52

8

Associates v. Edelman, 659 N.Y.S.2d 885, 887 (1ˢᵗ Dep't 1997); McQuillan v. Kenyon & Kenyon, 631 N.Y.S.2d 885, 885 (2d Dep't 1995). A partnership is dissolved when a partner "manifests an unequivocal election to dissolve the partnership." Id.; see N.Y. P'ship L. §60.

New York law provides that the sole method for winding up a partnership or a joint venture is through an accounting to determine the parties' rights. Ebker, 741 F. Supp. at 470; N.Y. P'ship. L. § 74. It is further provided that no action at law may be maintained prior to an accounting. Giblin v. Anesthesiology Assocs., 567 N.Y.S.2d 775, 776 (2d Dep't. 1991); see Edelman, 659 N.Y.S.2d at 887 (referring to accounting as dissolving partner's "sole remedy"); McQuillan, 631 N.Y.S.2d at 885 (same). Any legal claim asserted prior to the accounting process is to be dismissed. Stratavest, 888 F. Supp. at 37; Giblin, 567 N.Y.S.2d at 776; see also Ebker, 741 F. Supp. at 470 (while one partner may not sue another for conversion, any breach of duty can be addressed in the accounting process).

Plaintiffs' non-federal claims, other than the claim for an accounting, are claims for: (1) breach of contract (ninth cause of action); (2) declaratory judgment (seventh cause of action); (3) a claim denominated as a claim for "damages" (tenth cause of action), and (4) an unnamed claim referring to the alleged breach of a non-disclosure agreement and an accompanying vague allegation regarding the design of products similar to those sold under the Kittywalk name (eleventh cause of action). New York law is clear that such claims are properly categorized as legal claims arising between parties to a joint venture that cannot be heard prior to an accounting. Accordingly, the court grants Defendants' motion to dismiss the state law causes of action. Accord Stratavest, 888 F. Supp. at 37.

## Conclusion

For the foregoing reasons, the court grants the motion dismiss all but the causes of action for an accounting.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
April 6, 2006